IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TORI VARNELL,

        Plaintiff,

v.                              No.  12-CV-905 JCH/GBW

DORA CONSOLIDATED SCHOOL DISTRICT,
SUPERINTENDENT STEVE BARRON,
and AMBER SHAW,

        Defendants.

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

This matter comes before me on Defendants' Motion to Dismiss and accompanying briefing (*docs. 8, 9, 21, 32*), and Plaintiff's Motion to Amend Complaint and accompanying briefing, (*docs. 29, 34, 35, 38*).  Having reviewed the Motions and being fully advised, I recommend that Defendants' Motion to Dismiss be converted to a Motion for Summary Judgment and GRANTED.  I further recommend that Plaintiff's Motion to Amend be DENIED on the basis of futility.

I.    **FACTUAL BACKGROUND**

In 2004, Plaintiff Tori Varnell, then thirteen years old, was a student at the Dora Consolidated School in Dora, New Mexico.  *Doc. 1*, Ex. 1 ¶¶ 2, 3, 6, 10.  Defendant Steven Barron was Superintendent of the Dora Consolidated School District.  *Id.* ¶ 6. Beginning in 2004, Defendant Amber Shaw was employed by the Dora Consolidated School, first as a student teacher and later as an athletic coach.  *Id.* ¶ 7.  Defendant Shaw

acted as Plaintiff's volleyball, track, and basketball coach.  *Id*. ¶11.  At some point after Defendant Shaw began working at the school, she initiated a sexual relationship with Plaintiff.  *Id.* ¶¶ 10-14.[1]  On or about September 21, 2006, Plaintiff's mother became aware of Defendant Shaw's potentially inappropriate behavior towards her daughter. *Id.* ¶¶ 35-37; *see also doc. 21* ¶¶ 7-8.  Plaintiff's mother contacted Defendant Barron on September 27 and October 11, 2006, and conveyed her concerns about Defendant Shaw. *Id.* ¶¶ 36, 40; *see also doc. 21* ¶ 13.  Plaintiff's mother also spoke with the head coach at the school and stated that Defendant Shaw was not to have contact with her daughter. *Id.* ¶ 39; *see also doc. 21* ¶ 12.  Defendant Shaw resigned from the school some time in late 2006 or early 2007.  *Id.* ¶¶ 40-44; *see also doc. 21* ¶ 14.  In July 2010, Plaintiff expressly disclosed the sexual abuse to her mother.  *Id.* ¶ 46; *see also doc. 21* ¶ 24.  Plaintiff's mother informed Defendant Barron, who reported the sexual abuse to the Roosevelt County Sheriff's office.  *Id.* ¶¶ 47-48; *see also doc. 21* ¶ 25.  Defendant Shaw was indicted on two counts of criminal sexual contact with a minor on March 17, 2011.  *Id.* ¶ 53.

## II.   PROCEDURAL BACKGROUND

Plaintiff filed her Complaint in state court on May 24, 2012.  *Doc. 1*, Ex. 1. The matter was removed to this Court on August 24, 2012.  *Doc. 1.*  On October 24, 2012, Defendants filed both a Motion to Dismiss and a Motion to Stay Discovery pending

---

[1] The Amended Complaint is not precise in alleging either the date the abuse commenced or terminated. The Complaint does allege, however, that the abuse started while Ms. Shaw worked at the school and continued for "a number of years," and that Ms. Shaw resigned some time after October 2006.  *Doc.* 29, Ex. 1 ¶¶ 12, 15, 26, 38, 49, 53.

resolution of the Motion to Dismiss.  *Docs. 8, 10.*  Briefing on the Motion to Dismiss was

completed on December 21, 2012.  After the Court dismissed the initial Motion to Stay

for procedural reasons, (*doc. 12* at 1), Defendants filed a second Motion to Stay, (*doc. 15*).

The Court granted in part and denied in part Defendants' second Motion for Stay on

January 11, 2013, pending the ruling on the Motion to Amend, which was not fully

briefed at the time.  *Doc. 36* at 1.  Briefing on the Motion to Amend was completed on

January 28, 2013.

## III.   MOTION TO DISMISS SHOULD BE CONSTRUED AS BROUGHT UNDER FEDERAL RULE 12(b)(6) AND CONVERTED TO MOTION FOR SUMMARY JUDGMENT

### A.   Defendants' Motion Should be Construed as Brought Under Federal Rule 12(b)(6)

Defendants filed their motion to dismiss under Federal Rule of Civil Procedure

12(b)(1) arguing that Plaintiff's claims are time-barred.  *See doc. 9.*  In the Tenth Circuit,

the statute of limitations is an affirmative defense rather than a jurisdictional issue, and

is properly challenged via a Rule 12(b)(6) motion.  *See Murphy v. Klein Tools, Inc.*, 935

F.2d 1127, 1128–29 (10th Cir. 1991) (holding that dismissal on limitations grounds is a

judgment on the merits); *Schrader v. Richardson*, 461 F. App'x 657, 660 (10th Cir. 2012)

(addressing Eleventh Amendment immunity before the statute of limitations because

the former is "jurisdictional in nature"); *see also Smith v. City of Chicago Heights*, 951 F.2d

834, 839 (7th Cir. 1992) (statute of limitations governing § 1983 actions is procedural

rather than jurisdictional); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1167 (3d Cir.

1986) ("A statute of limitations time bar is not jurisdictional; rather it constitutes an affirmative defense that is waived if the defendant fails to raise it in the answer."); *but see McCoy v. Damron,* 9 F. App'x 994, 996 (10th Cir. 2001) (suggesting, in passing, that the statute of limitations presents a "jurisdictional issue").  The Court will therefore treat Defendants' Motion to Dismiss as raised under 12(b)(6) rather than 12(b)(1).  *See, e.g., Boellstorff v. State Farm Mut. Auto. Ins. Co.*, 2006 WL 1658449, at *2 (D. Colo. June 7, 2006).

### B.      Defendants' Motion Should be Converted to a Motion for Summary Judgment

When analyzing a Rule 12(b)(6) motion, the Court must assess whether the Plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted.  *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).  To the extent, however, that the motion relies on other material outside the pleadings, Rule 12(b) requires that the Court either exclude the extraneous material when deciding the motion, or convert the motion to one for summary judgment under Rule 56 and afford all parties the opportunity to present supporting material.  FED. R. CIV. P. 12(d); *Lamb v. Rizzo*, 391 F.3d 1133, 1136 (10th Cir. 2004).

Because Defendants styled their Motion to Dismiss as a factual 12(b)(1) motion, they attached Plaintiff's birth certificate as an exhibit in order to demonstrate that Plaintiff's action was time barred.  *Doc. 9*, Ex. 1.  In her Response to the Motion to Dismiss, Plaintiff argued that her claims are subject to equitable tolling and attached nine exhibits to support that contention.  *Doc. 21*, Exs. A-H.  Since the parties have

4

presented relevant evidence outside the pleadings, I recommend that the Court construe Defendants' Motion to Dismiss as a Motion for Summary Judgment under Rule 56.  *See* FED. R. CIV. P. 12(d).  Consequently, I will proceed under the standards applicable to a summary judgment motion.

I recognize that when converting a motion under Rule 12(b)(6) to a Rule 56 motion, "the trial court should give the parties notice of the changed status of the motion and thereby provide the parties to the proceeding the opportunity to present to the court all material made pertinent to such motion by Rule 56."  *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454, 457 (10th Cir. 1978).  This Report and Recommendations, therefore, serves as notice to the parties of the proposal that Defendants' Motion to Dismiss be treated as a motion for summary judgment.  The parties may, in filing objections to this Report and Recommendations, submit further evidence necessary to the Court's ruling.

Because my recommendations with respect to the motion to amend are interrelated to my recommendations on the dispositive motion, I will also address the Motion to Amend Complaint herein.

## IV.   STANDARD OF REVIEW

### A.   Summary Judgment under Federal Rule of Civil Procedure 56

Pursuant to Rule 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." FED. R. CIV. P. 56(a).  The court must adhere to three

principles when evaluating a motion for summary judgment.  First, the court's role is

not to weigh the evidence, but to assess the threshold issue whether a genuine issue

exists as to material facts.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  Second,

the court must resolve all reasonable inferences and doubts in favor of the non-moving

party, and construe all evidence in the light most favorable to the non-moving party.

*See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999).  Third, the court cannot decide any

issues of credibility.  *See Anderson*, 477 U.S. at 255.

### B.    Amendment of the Complaint

Based on the timing of Plaintiff's Motion to Amend, she is beyond the period

during which she can amend her complaint as a matter of course.  *See* Fed. R. Civ. P.

15(a)(1).  Therefore, the "decision to grant leave to amend a complaint . . . is within the

trial court's discretion."  *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.

1994).  Leave to amend shall be freely given "when justice so requires," but need not be

given where amendment would be futile.  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371

U.S. 178, 182 (1962).  "A proposed amendment is futile if the complaint, as amended,

would be subject to dismissal." *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's

Serv., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

To avoid a finding of futility, therefore, the amended complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A complaint fails to state a claim when it makes conclusory allegations of liability without supporting factual content.   *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79.   While the court must accept all the factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

## V.   PLAINTIFF'S FEDERAL CLAIMS ARE TIME-BARRED

Plaintiff brings her federal claims under § 1983 and Title IX of the Educational Amendments of 1972, as amended by the Civil Rights Restoration Act of 1987, 20 U.S.C. § 1681 *et seq.* ("Title IX").   In Counts II and V she alleges deprivation of her Fourth and Fourteenth Amendment rights by Defendant Shaw because of Defendant Shaw's conduct.   *Doc. 1*, Ex. 1 ¶¶ 69-78, 98-104.   In Counts III and IV she alleges violations of Title IX and the Fourteenth Amendment by all the Defendants arising from their failure to prevent Defendant Shaw's conduct.   *Id*. ¶¶ 79-97.   Defendants do not challenge the underlying factual claims relating to the alleged sexual abuse.   Rather, they argue that each of Plaintiff's claims is untimely, since the latest date of any incident of abuse is early 2007.   *Doc. 9* at 1-2.

### A.   New Mexico's three year personal injury statute applies to Plaintiff's federal claims

Section 1983 does not expressly establish the applicable statute of limitations. Consequently, the appropriate statute of limitations is determined by looking to the

forum state's law.  *See Burnett v. Grattan*, 468 U.S. 42, 47 (1984).  Where the state has a variety of statutes of limitations for different types of claims, the issue becomes which one should be used. Prior to 1985, the Supreme Court required courts to apply the statute of limitations of the state law claim most analogous to the particular § 1983 claim raised.  *Id*. at 49-50.  It quickly became apparent that a case-by-case method, which led to significant collateral litigation, was untenable, and the Supreme Court abandoned it in *Wilson v. Garcia*, 471 U.S. 261, 272-74 (1985).  There, the Court held that the state statute of limitations period governing personal injury claims applied to all § 1983 claims.  *Id*. at 276-80.

*Wilson*, however, did not resolve the circumstance where a state has multiple statutes of limitation applicable to different categories of personal injury claims.  In *Owens v. Okure*, 488 U.S. 235 (1989), the Court addressed this issue directly.  In *Owens*, the forum state had two "personal injury" limitations periods—one for most intentional torts and a residual period which applied to personal injury claims not covered by a specific statute of limitations.  The Court reasoned that having courts look to the limitations period applicable to intentional torts would invite the same difficulties that *Wilson* was designed to avoid because the courts would again need to determine the "most analogous" intentional tort.  *Id*. at 243-44, 248.  Consequently, the *Owens* Court held "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute

for personal injury actions." *Id.* at 249-50. Consistent with *Wilson* and *Owens*, the Tenth Circuit has subsequently rejected the "most analogous" approach and held that the limitations period applicable to § 1983 actions is drawn from the respective state's general personal injury statute of limitations. *See Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993).

Thus it seems clear that Plaintiff's § 1983 claims are subject to New Mexico's three-year general statute of limitations for personal injury claims. *See Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1207, 1218 (D.N.M. 2010) (citing *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008))); N.M. Stat. § 37-1-8 (1978). Plaintiff, however, points out that New Mexico has a statute which expressly sets out an action for damages due to childhood sexual abuse. *See* N.M. Stat. § 37-1-30 (1978). Plaintiff argues that, because this statute is more closely analogous to her claims than the general personal injury statute, its separate statute of limitations period should apply. *Doc. 21* at 9-11. This identical argument has been previously rejected in this Court. *See Yruegas v. Vestal*, 356 F. Supp. 2d 1238, 1241-43 (D.N.M. 2004) (finding that New Mexico's general statute of limitations applied to childhood sexual abuse claim).

In the face of the controlling precedent cited here and in *Yruegas*, Plaintiff presents two arguments for the application of the § 37-1-30 limitations period. First, Plaintiff points to *Cosgrove v. Kansas Dep't of Social & Rehabilitation Serv.*, 162 F. App'x 823, 827 (10th Cir. 2006). In *Cosgrove*, the district court dismissed a *pro se* § 1983

complaint alleging damages arising from childhood abuse *sua sponte* under 28 U.S.C. §
1915 for failure to file the action within the statute of limitations.  *Id*. at 824.  The Court
of Appeals, without the benefit of any briefing from Defendants,[2] reversed noting that a
"district court may consider affirmative defenses *sua sponte* for purposes of dismissal
under § 1915 'only when the defense is obvious from the face of the complaint and no
further factual record is required to be developed.'"  *Id*. at 825 (citation omitted).  The
Court imagined that facts could be developed to invoke a limitations period more
analogous (and longer) than the general personal injury limitations period.  *Id*. at 824-
27.  Therefore, the Court, harkening back to the admonition that a *sua sponte* dismissal
pursuant to § 1915 and based on an affirmative defense "is reserved for those
*extraordinary* instances when the claim's factual backdrop clearly beckons the defense,"
concluded that the plaintiff's *pro se* complaint did not "represent[] such an
extraordinary instance" and should not have been dismissed.  *Id*. at 828 (emphasis in
original).

Cosgrove cannot bear the weight Plaintiff places on it.  First, its unique procedural
posture limits its applicability to the instant case.  The *Cosgrove* opinion relied heavily
on the extraordinary nature of a *sua sponte* dismissal based on an affirmative defense.
Moreover, this posture meant that the Court received no briefing from Defendants,
which is the probable cause of the opinion's failure to distinguish *Wilson*, *Owens*, or

---

[2] *See* Case No. 05-3278 (10th Cir. 2005).

*Blake*.  Second, to the extent that it stands for the broad proposition argued by Plaintiff, it is an unpublished opinion without precedential authority.  *See* 10th Cir. R. 32.1(a). Even if it had been published, it conflicts with *Blake*, and this Court must follow *Blake* as earlier Circuit precedent.  *See Haynes v. Williams*, 88 F.3d 898, 900 (10th Cir. 1996).  As the Seventh Circuit responded to a plaintiff's attempt to argue that *Blake* was no longer the law of the Tenth Circuit due to the *Cosgrove* opinion:

> But, of course, it almost goes without saying that *Cosgrove*, an unpublished, nonprecedential decision . . . did not change the law of the Tenth Circuit.  Aside from being unpublished and nonprecedential, *Cosgrove* does not mention *Wilson*, *Owens*, or even *Blake* and endorses precisely what the Supreme Court has held is not permitted—applying different limitations periods to different § 1983 claims brought in a single state.  Under *Wilson* and *Owens*, the alleged facts underlying a § 1983 claim are wholly irrelevant for determining which state limitations period applies.  It is also notable that, due to the unique posture in *Cosgrove*, the court did not have the benefit of briefing from the defendants.

*Woods v. Ill. Dep't of Children & Family Serv.*, 710 F.3d 762, 768 n.4 (7th Cir. 2013).

Plaintiff's second argument is that applying New Mexico's general statute of limitation would undermine the goals of § 1983.  *Doc. 21* at 11-12.  It is true that the state limitations period will not be applied if it is inconsistent with implementing the federal law.  *See Baker v. Bd. of Regents of State of Kansas*, 991 F.2d 628, 632-33 (10th Cir. 1993). Aside from Plaintiff's fear that application of the general personal injury statute of limitation will cause the dismissal of her federal claims, she provides no basis to conclude that a three-year limitations period, especially one subject to tolling based upon minority and incapacity, is so inconsistent with federal interests that it should be

discarded.  *See Robertson v. Wegmann*, 436 U.S. 584, 593 (1978) ("A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation."); *see also Woods*, 710 F.3d at 767 (Illinois two-year limitations period not inconsistent); *McDougal v. County of Imperial*, 942 F.2d 668, 673 (9th Cir. 1991) (one-year limitations period not inconsistent with federal interests); *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1484 (11th Cir. 1989) (same).

Like § 1983, Title IX does not contain a statute of limitations, nor has the Tenth Circuit set one.  *See Nunley v. Pioneer Pleasant Vale Sch. Dist. No. 56*, 190 F. Supp. 2d 1263, 1264 (W.D. Okla. 2002).  Nonetheless, a Title IX claim is properly characterized "as an action for injury to personal rights" and is therefore subject to the same personal injury statute of limitations that governs § 1983 claims.  *See id*.  Several other Circuits have reached the same conclusion.  *See, e.g., Stanley v. Trustees of the Cal. State Univ.*, 433 F.3d 1129, 1134-36 (9th Cir. 2006); *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004); *M.H.D. v. Westminster Sch.*, 172 F.3d 797, 802-03 (11th Cir. 1999); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir. 1989).[3] Moreover, aside from the arguments addressed above in the context of § 1983, Plaintiff

---

[3] The undersigned does note a contrary result in an unpublished opinion from the Fourth Circuit.  *See Moore v. Greenwood Sch. Dist. No. 52*, 195 F. App'x 140, 143 (4th Cir. 2006) (holding that the applicable statute of limitations for a Title IX claims is South Carolina's Human Affairs Law rather than its general personal injury statute because the Human Affairs Law is more analogous to Title IX).  Of course, as in this Circuit, unpublished opinions in the Fourth Circuit lack precedential authority.  And, due to the weakness of its analysis, a subsequent district court opinion expressly rejected its result.  *See Doe v. Bd. of Educ. of Prince George's County*, 888 F. Supp. 2d 659, 664-65 (D. Md. 2012).

has not argued that her Title IX claims should be covered by a statute of limitation separate from N.M. Stat. § 37-1-8.

Therefore, because neither *Cosgrove* nor federal policy support a contrary result, I conclude that New Mexico's general personal injury statute of limitation is applicable to each of Plaintiff's federal claims. That limitations period is three years except that, where the injury occurred to a minor or an incapacitated person, the victim may file within "one year from and after the termination of such incapacity . . . ." N.M. Stat § 37-1-8, 37-1-10 (1978).

### B.      Plaintiff's claims accrued no later than early 2007

Federal law determines the date on which a § 1983 or Title IX claim accrues and the limitations period starts to run. *Mondragon*, 519 F.3d at 1082; *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007). The Supreme Court has explained that a cause of action accrues when "the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (quotation and citation omitted). In particular, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (internal quotation and citation omitted). A plaintiff "need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004). Nor must a plaintiff "know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993).

Instead, the court must determine "whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm.  In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief."  *Alexander*, 382 F.3d at 1216.  Clearly, this standard is an objective one.  *See Onyx Properties LLC v. Bd. of County Comm'rs of Elbert County*, 2012 WL 6190299, at *12 (D. Colo. Dec. 12, 2012).

### 1.  Plaintiff's Causes of Action Against Defendant Shaw

For each of Plaintiff's causes of action against Defendant Shaw, Plaintiff alleges that the violation of her rights arose out of the sexual abuse committed by Defendant Shaw.  *Doc. 1*, Ex. 1 ¶¶ 69-78, 94, 97, 99-104.  Ordinarily, the accrual date of the causes of action against Defendant Shaw for the sexual abuse would be the last date on which Defendant Shaw sexually molested Plaintiff—in this case the date of Defendant Shaw's resignation in late 2006 or early 2007.  *Id*., ¶¶ 40-44, 49; *Doc. 8*, Ex. 1.  Plaintiff argues, however, that until she could appreciate the full extent of the injuries that might have been caused by the sexual abuse, her claim could not accrue.  *Doc. 21* at 12.  Plaintiff does not claim to have forgotten or repressed memories of the sexual relationship.  *See e.g., doc. 21*, Ex. B ¶13.  Instead, she relies on the fact that "this was chronic sexual abuse and exploitation of an isolated female child betrayed by her school community resulting in severe anxiety about her sexual identity, current and future psychological and physical injuries that she still does not fully understand."  *Id.* at 14. However, the

14

accrual of a claim is not stayed simply because there may be some damage, whether it be future or existing, of which the plaintiff is not yet aware.  It is sufficient that the plaintiff knows "of a potentially actionable injury at the time the abuse occurred." *Walker v. Barrett,* 650 F.3d 1198, 1205 (8th Cir. 2011).

Construing the facts in the manner most favorable to Plaintiff, the date of accrual would have been no later than early 2007.  *Id*. ¶¶ 40-44, 49.  Plaintiff alleges that (1) while the abuse was occurring, it caused her to have suicidal ideations "as she did not see a way out," (2) Plaintiff was afraid to disclose the abuse for fear of homophobic retaliation, and (3) Plaintiff "hated every minute of the sexual encounters" with Defendant Shaw.  *Id*., ¶¶ 15, 18, 19, 20, 24; *see also Doc. 21*, Ex. A ¶ 1.  The fact that Plaintiff was repulsed by the sexual conduct *when it was occurring* and considered seeking help, but did not for a variety of reasons, demonstrates that she knew that Defendant Shaw's conduct was wrongful.

Moreover, even if as Plaintiff's expert avers, Plaintiff was subjectively unaware of the significant damage being done by the sexual abuse, the standard for accrual is an objective one.[4]  Plaintiff was fifteen years old at the time the abuse finally ended.  Even if a reasonable fifteen-year-old might not recognize the abuse as criminal, she would be well-aware that it was wrongful.  The conduct of Plaintiff's peers makes this clear:, as

---

[4] The undersigned notes that Plaintiff's argument would completely eviscerate the statute of limitations. In fact, Plaintiff's expert expresses the opinion that the Plaintiff's limitations period has still not even begun to run "because she is not yet insightful about the [full] consequences" of the sexual abuse.  *Doc. 21,* Ex. B ¶10.

early as 2005-2006, Plaintiff's friends suspected a wrongful sexual relationship between Plaintiff and Defendant Shaw. *Doc. 21*, Exs. D, E. In fact, they were so convinced of the existence of an improper relationship that they conducted their own investigation and reported the relationship to school officials including the Superintendent. *Id.*, Ex. D ¶¶ 3-12; Ex. E ¶¶6-12. By October 2006, Plaintiff's mother was also convinced that her daughter was involved in an inappropriate sexual relationship with Defendant Shaw and she too contacted school officials, demanding that they prevent any further unsupervised contact between Plaintiff and Defendant Shaw. *Id.*, Ex. C ¶¶ 7, 8, 12, 13, 14. No reasonable factfinder could conclude that a reasonable person -- who was aware of the facts of which Plaintiff was aware -- was not on notice of the civil claim against Defendant Shaw. Consequently, the claims against Defendant Shaw accrued no later than early 2007. *See e.g., M.H.D. v. Westminster Schools*, 172 F.3d 797, 805 (11th Cir. 1999); *Yruegas*, 356 F. Supp. 2d at 1241-43; *Ernstes v. Warner*, 860 F.Supp. 1338, 1340-41 (S.D. Ind. 1994). Given the three year statute of limitations, the latest date on which Plaintiff could file a cause of action against Defendant Shaw, absent any extension or tolling, would have been in early 2010. Plaintiff in fact filed her action in May 2012. *Doc. 1*, Ex. 1.

### 2. Plaintiff's Causes of Action Against Defendants Barron and the Dora Consolidated School District

Plaintiff's causes of action against Defendants Barron and the Dora Consolidated School District relate directly to Defendant Shaw's abuse. In Counts III and IV, Plaintiff

16

claims that Defendants Dora Consolidated School District and Barron violated her Fourteenth Amendment rights to equal protection and substantive due process, as well as her rights under Title IX, by failing to prevent the sexual abuse. *Id.* ¶¶ 83-89, 94-95. Because any failure to prevent the abuse could only occur while the abuse was ongoing, these claims also would have accrued ordinarily no later than early 2007. Plaintiff argues that she has obtained additional information of "Defendant Barron's betrayal" and so the claims against him have only recently accrued. *Doc. 21* at 6. However, "a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Alexander*, 382 F.3d at 1216. In early 2007, as discussed above, Plaintiff was aware of the sexual abuse. She was aware that Defendant Shaw was an employee of the school district and that Defendant Barron was the Superintendent of that district. She was aware that the basis of her acquaintance with Defendant Shaw was Defendant Shaw's job as her athletic coach at school. Finally, she was aware that much of the sexual abuse occurred or was initiated on school property and during school hours. With these facts and the knowledge of the sexual abuse, a reasonable factfinder could only conclude that reasonable diligence, exercised back in early 2007, would have discovered the vast majority of facts which Plaintiff has subsequently discovered that bear on her claims against the school district and Defendant Barron. Consequently, those claims also accrued as a matter of federal law in early 2007 meaning that, given the three year statute of limitations, the latest date on which Plaintiff could file a cause

of action against the school district and Defendant Barron, absent any extension or tolling, would have been in early 2010.  Plaintiff in fact filed her action in May 2012. *Doc. 1*, Ex. 1.

### C.    The incapacity extension of § 37-1-10 does not keep Plaintiff's claims within the limitations period

Notwithstanding the ordinary three-year limitations period, § 37-1-10 permits a cause of action to be brought by or on behalf of a minor or incapacitated person for one year after the termination of the incapacity.  N.M. Stat. § 37-1-10.  Plaintiff argues that the incapacity provision should apply here "due to incapacitating injuries arising from having been a victim of chronic sexual abuse by her female coach and arising from having been betrayed by school staff."[5]  *Doc. 21* at 14-18.  As evidence of her mental incapacity, Plaintiff states that it was not until after she graduated from high school that she realized that Defendant Shaw's actions were "criminal."  *Doc. 21*, Ex. A ¶ 3.  She also provides testimony from her treating psychiatrist, Dr. Gilbert Kliman, who describes the consequences of Defendant Shaw's emotional manipulation of Plaintiff. *Id.*, Ex. B ¶¶ 3-6.  In addition, Plaintiff  reiterates her "accrual" arguments, contending that the same facts that prevented her discovery of the abuse also rendered her incapacitated within the meaning of § 37-1-10.

---

[5] Plaintiff does not argue that the statute of limitations ought to be tolled based on her minority and, indeed, that argument would fail. Plaintiff turned 18 in 2010 and therefore under § 37-1-10 had one year from her 18th birthday to file suit.  Because Plaintiff did not file this lawsuit until 2012, tolling based on her minority would not render her claims timely.

In discussing mental capacity for the purposes of the ability to file a lawsuit, New Mexico courts have explained that incapacity means that a person is "unable to manage his business affairs or estate, or to comprehend his legal rights or liabilities." *Lent v. Employment Sec. Comm'n of State of N.M.*, 658 P.2d 1134, 1137 (N.M. Ct. App. 1982).   In New Mexico, exceptions to the statutes of limitations are to be construed strictly.  *Slade v. Slade*, 468 P.2d 627, 628 (N.M. 1970).

While Plaintiff undoubtedly suffered psychological trauma due to the abuse, there is no evidence before the Court that approaches meeting the relatively high standard of incapacity.  While Plaintiff describes a number of reasons why she did not come forward closer in time, there is no basis to conclude that she was **unable** to do so. In fact, Plaintiff's subsequent graduation from high school and matriculation to college where she seeks a biology degree demonstrates her considerable capacity.   Perhaps most conclusive, however, is the fact that no later than July 2010, Plaintiff was subjectively aware that: (1) Defendant Shaw's conduct had been criminal; (2) Defendant Shaw might molest other girls if Plaintiff did not come forward; (3) "what happened was not [Plaintiff's] fault"; and (4) Plaintiff "had a duty to try and protect others and to tell the people who loved me the truth about what happened with [Defendant] Shaw." *Doc. 21*, Ex. A ¶ 3; *see also id.*, Ex. E ¶ 14 (establishing Plaintiff graduated in May 2010). As a result, in July 2010, Plaintiff told her mother that Defendant "Shaw had repeatedly sexually molested her while she was a student in Dora Consolidated Schools."  *Id.*, Ex.

C ¶ 24.   At this time, Plaintiff was eighteen years old.   Even assuming Plaintiff was incapacitated for a certain period of time after the initiation of the abuse, no reasonable factfinder could conclude Plaintiff was incapacitated within the meaning of § 37-1-10 after July 2010.   Thus, § 37-1-10 could extend her limitations period no later than July 2011.   Plaintiff in fact filed her action in May 2012.   *Doc. 1*, Ex. 1.

### D.      Plaintiff's Limitations Period is Not Subject to Equitable Tolling

Notwithstanding Plaintiff's apparent failure to file her claims within the limitations period, she argues that the Court should find that the limitations period was equitably tolled by Defendant Barron's fraudulent concealment of the sexual abuse. *Doc. 21* at 18-20.   According to Plaintiff, Defendant Barron concealed Defendant Shaw's abuse of Plaintiff by (1) allowing Defendant Shaw to resign; (2) failing to report Defendant Shaw to the police; and (3) engaging in a romantic relationship with Plaintiff's mother.   *Id.* at 19-20.

Equitable tolling applies only in "rare and exceptional circumstances."   *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1207, 1216 (D.N.M. 2010) (*quoting Laurson v. Leyba*, 507 F.3d 1230, 1232 (10th Cir. 2007)).   Fraudulent concealment can lead to equitable tolling under New Mexico law.   *See Garcia ex rel. Garcia v. La Farge*, 893 P.2d 428, 432 (N.M. 1995).   A party seeking to toll a statute of limitations through this doctrine must prove that: (1) the other party engaged in conduct amounting to intentional false representation or concealment of material facts; (2) the injured party reasonably relied

20

on the other party and the concealment was successful; and (3) the injured party did not know, and through the exercise of reasonable diligence, could or should not have known the true facts giving rise to a cause of action. *See Cont'l Potash, Inc. v. Freeport–McMoran, Inc.*, 858 P.2d 66, 74 (N.M. 1993). As is clear from those elements, "if a plaintiff discovers the injury within the [limitations period], fraudulent concealment does not apply because the defendant's actions have not prevented the plaintiff from filing the claim within the time period and the equitable remedy is not necessary." *Tomlinson v. George*, 116 P.3d 105, 111 (N.M. 2005). At the summary judgment stage, Plaintiff has the burden of alleging sufficient facts that if proven would toll the statute. *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1428 (10th Cir. 1996) (*citing Dow v. Chilili Coop. Ass'n*, 728 P.2d 462, 464 (N.M. 1986)).

Even assuming the truth Plaintiff's allegations, she has not met this burden.[6] None of Defendant Barron's actions or inactions concealed or misrepresented anything from Plaintiff. Allowing Defendant Shaw to resign in no way concealed Defendant Shaw's misconduct from Plaintiff or her mother. Even if the relationship between Plaintiff's mother and Defendant Barron distracted Plaintiff from pursuing her legal claim, it did not constitute concealment of the underlying facts of Defendant Shaw's abuse. As for Defendant Barron's failure to report Defendant Shaw to the police,

---

[6] New Mexico also recognizes a related doctrine of tolling based on equitable estoppel. *See Vill. of Angel Fire v. Bd. of County Comm'rs of Colfax County*, 148 N.M. 804, 809 (Ct. App. 2010). It appears to the undersigned that this doctrine is not materially different from equitable tolling based on fraudulent concealment. In any event, Plaintiff has not met the elements of equitable estoppel for the same reasons she has not met the elements of equitable tolling based on fraudulent concealment.

Plaintiff contends that *Hardin v. Farris*, 530 P.2d 407 (N.M. Ct. App. 1974), stands for the proposition that failure to report an injury is fraudulent concealment. *Doc. 21* at 19. That case involved a failed tubal ligation and resulting unwanted pregnancy. *Hardin*, 530 P.2d at 408-09 (*superseded by statute as stated in Tomlinson v. George*, 116 P.3d 105 (N.M. 2005)). But in that case, the only way that the plaintiff would have known of her injury (the incomplete tubal ligation) was through the defendant doctor who performed the surgery. Such was not the circumstance here. As discussed above, Plaintiff was aware of Defendant Shaw's sexual misconduct and none of Defendant Barron's alleged actions or inactions did, or could, alter that knowledge.

With respect to the relationship between Defendant Barron and Plaintiff's mother, Plaintiff's mother was already sufficiently convinced of an improper relationship that she directed Defendant Barron and the school's head coach to prevent any further unsupervised contact between Plaintiff and Defendant Shaw. In fact, to the extent that her relationship with Defendant Barron was such a distraction to Plaintiff's mother that she could not manage to vindicate her daughter's rights via a lawsuit, it was over by March 2008. *See doc. 21*, Ex. C ¶17. Any equitable tolling based on this suspect basis would not render Plaintiff's filing timely.

Plaintiff also argues that federal equitable tolling applies to this case. *Doc. 21* at 18. Federal law will only toll a statute of limitations for a Section 1983 cause of action where "the [state] tolling rules are inconsistent with federal law or with the policy

which federal law seeks to implement." *Onyx Properties LLC v. Bd. of County Comm'rs of Elbert County*, 868 F. Supp. 2d 1164, 1169 (D. Colo. 2012) (*quoting Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632-33 (10th Cir. 1993)).  Plaintiff has not argued that New Mexico's tolling laws are inconsistent with federal law, nor has she shown that they interfere with the policy goals behind Section 1983 actions (namely compensation, deterrence, uniformity and federalism, *see Onyx Properties*, 868 F. Supp. 2d at 1169 (*citing Bd. of Regents, Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 484-85 (1980))).  *See doc. 21* at 18-19. In fact, Plaintiff expressly relies on New Mexico's tolling laws throughout her briefing. *See doc. 21* at 9-12, 14-20.  Indeed, her discussion of federal equitable tolling cites primarily to state case law and the state law doctrine of fraudulent concealment.  *Id.* at 18-20.  There is no basis to apply federal equitable tolling to this case.

### E.    Plaintiff's Request Pursuant to Rule 56(d) Should Be Denied

In her response to Defendants' motion to dismiss, Plaintiff anticipates the Court's conversion of it into a motion for summary judgment.  *Doc. 21* at 1-2.  In the event of a conversion, Plaintiff has requested "further discovery of material jurisdictional facts" and filed an affidavit under Rule 56(d).  *Id.* at 2, Ex. H.  A party seeking to defer a ruling on summary judgment under Rule 56(d) must provide an affidavit "explain[ing] why facts precluding summary judgment cannot be presented."  *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (citation omitted). This includes identifying (1) "the probable facts not available," (2) why those facts cannot be

23

presented currently, (3) "what steps have been taken to obtain these facts," and (4) "how additional time will enable [the party] to" obtain those facts and rebut the motion for summary judgment. *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010). As an initial matter, Plaintiff's affidavit fails to identify items 2 or 3 of this list. More significantly, the discovery Plaintiff seeks to conduct will not alter the statute of limitation analysis.

In Plaintiff's 56(d) affidavit, she identifies the discovery she wishes to conduct and claims that the discovery is required to gather "information concerning Defendant Barron's fraudulent concealment of the sexual molestation of Plaintiff, and the policies of the School Defendants and of more facts that support allegations against School Defendants and Amber Shaw in Plaintiff's Complaint." *Doc. 21*, Ex. H ¶ 3. Of these general topics, only one potentially bears on the legal question discussed herein— "information concerning Defendant Barron's fraudulent concealment of the sexual molestation of Plaintiff." Nonetheless, I recommend denying the request for further discovery on this topic.

Plaintiff's theory of fraudulent concealment fails at a conceptual level, not a factual one. None of the allegations Plaintiff makes against Defendant Barron, even if they were established as a result of further discovery, would constitute fraudulent concealment sufficient to invoke equitable tolling. Even assuming that Defendant Barron allowed Defendant Shaw to resign quietly and slip out the back door in the hope

that Plaintiff would then decide not to file a lawsuit, such would not constitute fraudulent **concealment**.  Even assuming that Defendant Barron did not report the abuse to law enforcement in violation of his statutory duties, such would not constitute fraudulent **concealment**.  Even assuming that Defendant Barron dated Plaintiff's mother hoping that the relationship would distract her from pursuing a lawsuit, such would not constitute fraudulent **concealment**.  In short, even assuming Plaintiff's allegations as true, Defendant Barron concealed nothing that would have prevented Plaintiff from bringing her claim.  Plaintiff herself possessed all the information necessary to bring a claim against Defendant Shaw and was on reasonable notice of her claims against the school Defendants.  Further discovery to corroborate Plaintiff's claims of fraudulent concealment has no reasonable chance of establishing grounds for equitable tolling.  As such, I recommend denying Plaintiff's Rule 56(d) request for further discovery.

### F.    Conclusion Regarding Limitations Period

Based on undisputed facts, no reasonable fact-finder could find that any of Plaintiff's claims accrued later than early 2007.  As such, the limitations period required that they be filed no later than early 2010.  Even assuming that she was incapacitated for a period of time after the sexual abuse, no reasonable fact-finder could conclude that the incapacity was lifted later than July 2010.  As such, the limitations period would have required that her claims be filed by July 2011.  Because her claims were not filed until

May 24, 2012, they were untimely.  Plaintiff has not met her burden of establishing any grounds on which to equitably toll the limitations period.  Therefore, I conclude that her claims are time-barred.  I recommend that the Court grant Defendants' motion for summary judgment as to Counts II, III, IV, and V, and dismiss those claims with prejudice.

## VI.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIM

Count I of Plaintiff's Complaint is a negligence claim pursuant to N.M. Stat. § 41-4-6.  *Doc. 1*, Ex. 1 ¶¶ 55-68.  This claim is not based on federal law nor does the record reflect any basis for diversity jurisdiction.  Consequently, any jurisdiction over this claim would be an exercise of the Court's supplemental jurisdiction.  *See* 28 U.S.C. § 1367.  Upon dismissal of Plaintiff's federal claims, this Court must decide whether or not it will adjudicate any remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").  When all federal claims have been dismissed from a case, supplemental state claims will ordinarily be dismissed without prejudice.  *Roe v. Cheyenne Mountain Conference Resort*, 124 F.3d 1221, 1237 (10th Cir. 1997).  Because I recommend dismissing all the claims over which this Court has original jurisdiction and I see no reason to depart from the ordinary rule, I also recommend that the Court decline to exercise jurisdiction over Plaintiff's remaining state law claim and dismiss it without prejudice.

## VII.   PLAINTIFF'S PROPOSED AMENDMENTS WOULD BE FUTILE

In her Motion to Amend the Complaint, Plaintiff seeks to add five new claims and an additional defendant.  Plaintiff's amended complaint includes causes of action for conspiracy under § 1983 (*doc. 29*, Ex. 1 at 19, 21; Counts VII and VIII), as well as for conspiracy, failure to prevent sexual abuse, and supervisory liability under the New Mexico Tort Claims Act (*id.* at 14, 22, 24; Counts III, IX, and X).  Plaintiff also seeks to join Myra Skinner, the head coach at Dora Consolidated School at the time of the abuse, as a defendant.  *Id.* at 1, 3.  Defendants oppose the Motion to Amend the Complaint on the basis of futility.  *See docs. 34, 35*.  Because Plaintiff's proposed Amended Complaint would be subject to dismissal, I recommend denying the Motion to Amend.

### A.    Plaintiff's Section 1983 Claims Are Not Sufficiently Specific

Plaintiff seeks to add two Section 1983 conspiracy claims to her pleadings.  As the Tenth Circuit has explained, "[a]llegations of conspiracy may, indeed, form the basis of a § 1983 claim.  However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants.  Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (*citing Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)) (internal citation and quotation omitted).

Plaintiff's proposed Amended Complaint fails to meet this requirement.  Instead of alleging specific facts showing either an agreement or a concerted action amongst

Defendants Barron, Skinner, and Shaw in Counts VII and VIII, Plaintiff presents only conclusory allegations.   For example, Plaintiff states that "Defendants Barron and Skinner conspired and agreed, either expressly and/or tacitly" to violate Plaintiff's civil rights and that "Barron and Skinner each committed acts and purposeful omissions in furtherance of the conspiracy to deny Plaintiff of her constitutional rights."  *Doc. 29*, Ex. 1 ¶¶ 130, 132.  Nor does a review of the remainder of the amended complaint reveal sufficient factual support for Plaintiff's allegations.

These allegations fall far below the requirement of providing specific facts showing agreement and concerted action as required by *Tonkovich*.   Plaintiff's proposed Section 1983 conspiracy claims would be subject to dismissal as written and therefore permitting an amendment to add them would be futile.

### B.   The Court Should Not Exercise Supplemental Jurisdiction over Plaintiff's Newly Proposed New Mexico Tort Act Claims

Plaintiff also seeks to amend her complaint to add claims under the New Mexico Tort Claims Act against Defendants Shaw, Barron, and Skinner for conspiracy and against Defendants Barron and Skinner for negligence and supervisory liability.   As described above, I recommend that all current federal claims be dismissed and that Plaintiff's attempt to add federal 1983 conspiracy claims be denied.  As such, no federal claims would be before the Court.  The newly proposed New Mexico Tort Claims are not based on federal law nor does the record reflect any basis for diversity jurisdiction.  Consequently, any jurisdiction over these claims would be an exercise of the Court's

supplemental jurisdiction. *See* 28 U.S.C. § 1367.  As noted above, when all federal claims have been dismissed from a case, supplemental state claims will ordinarily be dismissed without prejudice. *Roe*, 124 F.3d at 1237.  Because I recommend dismissing all the claims over which this Court has original jurisdiction and I see no reason to depart from the ordinary rule, I would also recommend that the Court decline to exercise jurisdiction over Plaintiff's newly proposed state law claims.  Consequently, permitting their amendment would be futile.

### C.    The Proposed Federal Claims Against Skinner Would Be Time Barred

Plaintiff also seeks to add Myra Skinner as a Defendant. *Doc. 29* at 1.  Ms. Skinner was employed as the head coach at the Dora Consolidated School during the time that the alleged abuse occurred. *Id*. at 3.  The proposed federal claims against her suffer the same statute of limitations problem as discussed with the other Defendants. As such, permitting her addition as a defendant would be futile. *See supra* pp. 17-18.

I conclude that all new claims found in Plaintiff's proposed Amended Complaint would be subject to dismissal with or without prejudice.  Therefore, I recommend denial of her Motion to Amend Complaint.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the Court treat Defendants' Motion to Dismiss (*doc. 8*) as a motion for summary judgment.  I further recommend that the Court grant that motion and dismiss Plaintiff's federal claims as time-barred and that it

decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.

In addition, I recommend that the Court find that Plaintiff's proposed amendments to

the Complaint would be futile and therefore deny Plaintiff's Motion to Amend the

Complaint (*doc. 29*).

       **IT IS SO ORDERED.**

_____

GREGORY B. WORMUTH

UNITED STATES MAGISTRATE JUDGE

---

       **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---